IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES MILTON CAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 2:22-cv-596-ECM |
| | ) | [WO] |
| ROLANDA CALLOWAY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

On May 10, 2022, Plaintiff James Milton Cain ("Cain"), an inmate at Elmore Correctional Facility ("Elmore"), was repeatedly stabbed by another inmate.  He now sues various Alabama Department of Corrections ("ADOC") officials and Elmore wardens and officers (collectively, "Defendants"), alleging that they violated his Eighth and Fourteenth Amendment rights under the United States Constitution, as well as Alabama state law.  Now pending before the Court is the Defendants' motion to dismiss. (Doc. 72).  The motion is fully briefed and ripe for review.  For the reasons below, the Court concludes the motion is due to be GRANTED in part and DENIED in part.

**II.  JURISDICTION AND VENUE**

The Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction over Cain's state law claims pursuant to 28 U.S.C. § 1367(a).  Personal jurisdiction and venue are uncontested, and the

Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

### III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(A)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  At this stage of the proceedings, "the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Bailey v. Wheeler*, 843 F.3d 473, 478 n.3 (11th Cir. 2016).

The determination of "whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted).  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citation omitted).

# IV.  BACKGROUND

## A.    Procedural History

On October 6, 2022, Cain filed his initial complaint *pro se*. (Doc. 1).  This Court referred the matter to the Magistrate Judge (doc. 4), with whom it remained through two amended complaints (*see* docs. 10, 25) and a special report and answer (doc. 37).  In January 2024, attorney Lauren Faraino filed a notice of appearance on Cain's behalf. (Doc. 46).  The Court vacated its referral order and ordered Cain to file his third amended complaint by March 11, which he did. (Doc. 61).  The Defendants moved to dismiss that complaint, but Cain was granted leave to file a fourth amended complaint by May 6. (Doc. 70).  Cain filed his fourth amended complaint ("complaint") (the operative complaint) on May 8 (doc. 71), which the Defendants moved to dismiss on May 20 (doc. 72).  On June 4, Cain responded (doc. 75); on June 11, the Defendants replied (doc. 76); and on June 21, Cain filed a surreply (doc. 79).

## B.    The Defendants

Cain brings claims against several Defendants associated with the ADOC and Elmore in their individual capacities.  Before discussing Cain's factual allegations, the Court introduces the Defendants, their roles, and the responsibilities they are alleged to have had during the events underlying Cain's complaint.

- John Hamm ("Commissioner Hamm"), Commissioner of the ADOC.  In this role, he was responsible for the management and staffing of prison facilities, as well as the safety and security of all inmates incarcerated within the ADOC.

- Rolanda Calloway ("Warden Calloway"), Warden of Elmore and an employee of the ADOC. In her role as Warden, she oversaw daily operations at Elmore, the safety

and security of all inmates at Elmore, and the supervision of all subordinate employees.

- Jeffrey Baldwin ("Warden Baldwin"), Deputy Warden of Elmore and an employee of the ADOC. In his role as Deputy Warden, he was responsible for daily operations, the safety of all prisoners, and the supervision of all subordinate employees at Elmore.

- Darryl Fails ("Captain Fails"), Security Captain at Elmore. In this role, he was responsible for the safety of all prisoners at Elmore and the supervision of all security activities and subordinate employees.

- Charles McKee ("Warden McKee"), Correctional Warden at Staton Correctional Facility ("Staton"). In this role, he was responsible for the safety of all prisoners at Staton and the supervision of all security activities and subordinate employees.

The Court refers to these Defendants, collectively, as the "Supervisory Defendants."

- Michael McCullough ("Officer McCullough"), Basic Correctional Officer ("BCO") at Elmore. It was Officer McCullough's responsibility to monitor the dorm in which Cain was attacked on May 10.

- Antonio Barnes ("Officer Barnes"), employed by the ADOC at Elmore. Cain does not directly allege in what capacity Barnes was employed, but the Court infers from the factual allegations that he was an officer. It was also his responsibility to monitor the dorm in which Cain was attacked on May 10.

- Richard Story ("Officer Story"), employed by the ADOC at Elmore. Cain does not directly allege in what capacity Story was employed, but the Court infers from the factual allegations that he was an officer. Cain does not allege Story's responsibilities at Elmore.

The Court refers to these Defendants, collectively, as the "Officer Defendants."

## C.    Facts

The Court summarizes here the relevant factual allegations in Cain's forty-page complaint. Cain also attaches to his complaint the results of a Department of Justice investigation into the conditions at Alabama men's prisons from 2015–2018. (*See* doc. 71-

1) ("DOJ Report").  Because Cain attached that document to his complaint, the Court may consider it as part of the record at the motion to dismiss stage. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("Where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claims, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").  The Court also takes judicial notice of certain facts from ADOC reports cited by the parties in their briefing, as they are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[1] FED. R. EVID. 201(b)(2); *see also Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) ("A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgement." (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999))). In ruling on the Defendants' motion to dismiss, the Court accepts as true the well-pled facts of the complaint. *See Ashcroft*, 556 U.S. at 678.

### 1. The May 10 Stabbing

In the late morning of May 10, 2022, Cain was housed in the A2 Dorm at Elmore. (Doc. 71 at 8–9, para. 13).[2]  At that time, Officer McCullough was the only officer

---

[1] These facts primarily come from two ADOC-produced reports. *See Monthly Statistical Report for May 2022*, ALABAMA DEPARTMENT OF CORRECTIONS, https://doc.alabama.gov/docs/MonthlyRpts/May%202022.pdf (last visited Feb. 24, 2025) ("May Report"); *Quarterly Report Ending 6/30/22*, ALABAMA DEPARTMENT OF CORRECTIONS, https://doc.alabama.gov/docs/QuarterlyRpts/QuarterlyEnding6-30-22.pdf (last visited Feb. 24, 2025) ("Quarterly Report").

[2] References to page numbers are to those generated by the Court's CM/ECF electronic filing system.

monitoring both the A1 and A2 Dorms. (*Id.* at 17, para. 61).  That meant he was supervising approximately 332 inmates all on his own. (*Id.*).

As the clock approached noon on May 10, multiple officers saw an inmate named Bernard Cannon ("Cannon") throwing around a shank knife.[3] (*Id.* at 9, para. 14).  Despite seeing Cannon in possession of this dangerous contraband, the officers did not seize it. (*Id.*).  Shortly after, Cannon repeatedly stabbed Cain with the shank knife. (*Id.* at 8–9, para. 13).  While this attack occurred, Officer McCullough stood in the doorway approximately twenty feet away, failing to stop the attack despite inmates yelling for help. (*Id.* at 9, para. 15).  After Cannon stabbed Cain six times, Officers Barnes and Garrison arrived to subdue Cannon. (*Id.* at 9, para. 16).  The delay in the Officers' arrival allowed Cannon time to hide the shank knife. (*Id.*).  Eventually, Officers Barnes and Garrison subdued Cannon and recovered the shank knife. (*Id.* at 9, para. 17).

While Cain bled profusely, Officer Story, who had arrived to assist Officers Barnes and Garrison, handcuffed Cain to transport him to Staton's Health Care Unit to receive medical care.[4] (*Id.* at 9, para. 18).  While handcuffed, Cain continued bleeding and experienced a great deal of additional pain. (*Id.* at 9, para. 19).  Eventually, Officer Story removed Cain's handcuffs and escorted him over 125 yards of concreate pathways to the Health Care Unit. (*Id.* at 9–10, paras. 20–21).  This walk crippled Cain, forcing him to stop and kneel repeatedly as blood continued to flow out of his wounds. (*Id.* at 10, para. 22).

---

[3] The Court notes the inconsistency in Cain alleging that Officer McCullough was the only one monitoring the A2 Dorm, but other officers somehow saw Cannon in that dorm with a knife.  However, the Court is reciting the facts as alleged in the complaint.

[4] Staton abuts Elmore and handles medical care for inmates at both facilities. (Doc. 76 at 5).

He nearly passed out several times. (*Id.* at 10, para. 26).  Although Elmore had a gurney, officers never offered it to Cain. (*Id.* at 10, para. 24).

After being seen at Staton, Cain was taken to the emergency room at Jackson Hospital in Montgomery. (*Id.* at 10, para. 27).  There, he received extensive medical treatment and was held overnight for observation. (*Id.* at 10, para. 28).  Upon his return to Elmore, officers ordered Cain to return to his normal dorm and bunk assignment, which meant he would be sleeping on the top bunk in the dorm where he had just been attacked. (*Id.* at 10–11, paras. 28–29).  Cain asked prison staff to move him to a lower bunk because his back and stomach wounds had been closed with stitches. (*Id.*).  Officers denied Cain's request, and he inadvertently tore his stitches as he climbed into his top bunk, causing bleeding once again from his wounds. (*Id.* at 11, paras. 30–32).  Despite reporting this to prison staff, officers kept Cain in his upper bunk, and he received no new medical attention. (*Id.* at 11, paras. 33–34).

### 2. Conditions at Elmore

Cain alleges that Elmore suffers greatly from overcrowding and understaffing, and that his experience is merely "emblematic of the widespread violence and abuse rampant within Elmore's walls." (*Id.* at 11, paras. 35–36).  According to the DOJ Report, just 41% of Elmore's authorized correctional officer positions were filled. (Doc. 71-1 at 17).  Cain alleges that "[m]uch of the time . . . a single cube officer[5] [is] the only officer monitoring the entire A2 area." (Doc. 71 at 16, para. 60).  Moreover, "cube officers often fail[] to pay

---

[5] The Court gathers that a "cube" is the area where an officer sits while monitoring the inmates through a window.

attention to the happenings in the blocks" or do not "leave their cubicles to ensure that the block [is] secure." (*Id.*). Sometimes, cube officers at Elmore are seen "asleep or otherwise distracted from their oversight and security obligations," and many "ha[ve] not even completed basic correctional officer training." (*Id.*). At full staffing, Elmore dorms should have *two* officers *each*—one in the cube and one out in the dorm. Cain alleges that often, and at the time of his attack, there is only *one* officer in charge of *two* dorms. (*Id.* at 17, paras. 62–63).

Cain alleges that this level of understaffing "allow[s] dangerous contraband, including knives and prisoner-made weapons, to proliferate the facility, and [dangerous prisoners] to roam in search of a victim." (*Id.* at 17, para. 64). Inmates "easily have the time and space to create their own weapons and use them against other prisoners without being caught." (*Id.* at 12, para. 38). Indeed, "inmates frequently gain access to unauthorized locations and use their self-made weapons to commit violent acts without intervention." (*Id.*). The "rampant" amount of "dangerous contraband" that regularly infiltrates ADOC facilities only increases the already "[f]requent stabbings and other violent attacks." (*Id.* at 14, para. 51). "[S]ecurity staff at Elmore [see] violent or troubling incidents unfold without intervening based on inadequate training, direction, supervision, or resources." (*Id.* at 17, para. 64). Cain asserts that these problems were felt "particularly acute[ly]" in warehouse-style dorms. (*Id.* at 16, para. 59).

Cain alleges that the Defendants knew of the conditions at Elmore through, among other things, the DOJ report, personal observations, press coverage, ADOC reports, internal staff discussions, and prisoner lawsuits.

8

### 3. The Defendants' Alleged Failures

Cain claims that even though the Defendants knew of Elmore's dangerous conditions, they "failed to improve supervision and monitoring in Elmore." (*Id.* at 18, para. 70). According to Cain, the "Defendants took a completely 'hands off' approach and did not take reasonable steps to ensure that reasonable safety policies were started, let alone continued." (*Id.* at 18, para. 68). Cain alleges that the Defendants did not "(a) provide any additional staffing; (b) improve supervision and monitoring of existing staff; (c) implement additional training; (d) make an effort to reduce overcrowding; (e) create oversight of correctional officer behaviors; (f) limit the co-mingling of inmates from different housing blocks; or (g) ensure that housing assignments were followed." (*Id.* at 18–19, para. 70). He further asserts that the Defendants "did not take steps to reduce inmate access to weapons." (*Id.* at 20, para. 79). They did not, for example, "implement screening on entry for officers to limit entry of outside[] manufactured weapons, complete full-facility searches for weapons, or even search and confiscate weapons from inmates they had reason to believe might be armed and dangerous." (*Id.*). Cain further alleges that "even in the instances where weapons were recovered, the Supervisory Defendants failed to ensure that inmates were properly disciplined for possession of weapons, thus creating a dangerous culture whereby inmates knew they could possess weapons with immunity and felt emboldened to use those weapons without fear of incurring discipline." (*Id.* at 20, para. 80). According to Cain, "[t]hese failures led directly to the unreasonably heightened risk of inmate violence Cain faced and directly to Cannon'[s] attack of Cain with a prison shank." (*Id.* at 20, para. 81).

The Defendants offer facts from ADOC reports to show that they have attempted to remedy conditions and staffing at Elmore. Specifically, the Defendants point to the reports showing prison staff confiscated contraband; that the ADOC offers higher salaries to individuals with more education or experience, as well as retention bonuses; and that the ADOC has leave benefits. (*See* doc. 76 at 3–4).

## D.    Cain's Claims

Cain brings four claims pursuant to 42 U.S.C. § 1983, and two claims under Alabama state law. First, Cain asserts a failure-to-protect claim under the Eighth and Fourteenth Amendments against all Defendants based on the injuries he sustained in the May 10 attack. (Count I). Second, he claims that all Defendants violated the Eighth and Fourteenth Amendments by subjecting him to a state-created danger. (Count II). Third, he alleges that the Officer Defendants violated his Eighth and Fourteenth Amendment rights by failing to intervene in the May 10 attack. (Count III). Finally, he alleges that all Defendants conspired to violate his Eighth and Fourteenth Amendment rights. (Count IV). Under state law, Cain brings negligence and civil conspiracy claims against all Defendants. (Counts V and VI).

## V.  DISCUSSION

The Defendants make multiple arguments in support of dismissal.[6] First, the Defendants claim Cain's complaint is an impermissible shotgun pleading. The Defendants

---

[6] Pursuant to Federal Rule of Civil Procedure 41(b), the Defendants move to dismiss Cain's entire complaint because it was filed two days past the Court-imposed deadline of May 6, 2024. (*See* doc. 70). This argument is unpersuasive. For one, the Defendants cannot (and do not) seriously argue they were prejudiced by this delay, considering they had access to Cain's proposed complaint on May 1, 2024, when Cain moved for leave to file it. (*See* doc. 69-1). Further, Cain's counsel represents that the delay was due to an honest

further assert that Cain fails to state a federal claim, but that even if he did, they are entitled to qualified immunity on Count II (all Defendants) and Count III (Officer Defendants). Finally, the Defendants argue that they are entitled to state agent immunity as to Cain's state law claims. The Court first addresses Cain's claims against two Defendants: Captain Fails and Warden McKee.

## A.    Claims Against Captain Fails and Warden McKee

As an initial matter, all claims against Captain Fails and Warden McKee are due to be dismissed. Cain names Captain Fails and Warden McKee as Supervisory Defendants and discusses their responsibilities at Elmore, but fails to make any factual allegation to support the elements of his claims against them. For example, there are no factual allegations as to their knowledge of the conditions at Elmore or the actions they failed to take to remedy those conditions. Indeed, after listing Captain Fails and Warden McKee as Defendants, Cain does not mention either of them again anywhere in the complaint. Cain has therefore not stated a plausible claim for relief against either of these Defendants, and they are due to be DISMISSED from this suit.[7]

## B.    Shotgun Pleading

The Defendants argue that Cain's complaint "is an impermissible shotgun pleading that fails to give the Defendants adequate notice of the allegations and claims asserted against them." (Doc. 73 at 3). Federal Rule of Civil Procedure 8(a)(2) requires a complaint

---

oversight, and the Court accepts this explanation. (Doc. 75 at 5). So to the extent the Defendants' motion to dismiss is based on Rule 41(b), it is DENIED.

[7] For the remainder of this Opinion, any reference to the "Defendants" or the "Supervisory Defendants" excludes Captain Fails and Warden McKee.

to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Likewise, Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Pleadings "that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) (citation omitted).

Shotgun pleadings fall into "four rough types or categories." *Id.* at 1321. The first "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second is a complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. The third does "not separat[e] into a different count each cause of action or claim for relief." *Id.* at 1322–23. And the fourth category of complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323.

The Defendants argue that Cain's complaint falls into the second and fourth categories of impermissible shotgun pleadings. The Court disagrees. The complaint is not "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. While there are some conclusory allegations throughout the complaint, there are also relevant factual allegations which Cain uses to

support his claims.  Cain does refer to groups of Defendants in multiple counts, but that does not necessarily render his complaint a shotgun pleading. S*ee Kyle K. v. Chapman,* 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.").  Ultimately, "[c]omprehension, not perfection, is the standard of the pleading rules.  And, in this case, [Cain's] complaint is sufficiently comprehensible so as not to be a shotgun pleading." *See Brown v. Dunn*, 2024 WL 5168637, at *12 (M.D. Ala. Dec. 19, 2024).

## C.    Count I:  Failure to Protect

Cain alleges that he faced a substantial risk of a serious attack from another inmate while housed at Elmore, and that the Defendants knew of this risk but consciously disregarded it, contributing to Cain's May 10 attack.  The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. CONST. amend VIII.  As a part of this prohibition, prison officials must "take reasonable measures to guarantee the safety of [] inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  This duty encompasses "protect[ing] prisoners from violence at the hands of other prisoners." *Id.* at 833.  Courts refer to lawsuits alleging a breach of this duty as "failure-to-protect" claims. A plaintiff sufficiently alleges a failure-to-protect claim by alleging facts showing "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; *and* (3) causation." *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (citation omitted) (emphasis in original).

13

A plaintiff may allege a substantial risk of serious harm by stating facts plausibly showing that prison conditions "were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (citation omitted). In cases of inmate-on-inmate violence, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment"; however, an "excessive risk of inmate-on-inmate violence at a [prison] creates a substantial risk of serious harm." *Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga*, 400 F.3d 1313, 1320–22 (11th Cir. 2005).

In the Eleventh Circuit, "[§] 1983 plaintiffs" have "advance[d] an Eighth Amendment claim for failure to protect an inmate under two different theories": generalized risk and particularized risk. *Est. of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016).[8] Under a generalized risk or "dangerous conditions" theory, plaintiffs have asserted that a defendant is responsible for a prison condition that subjects inmates to a substantial risk of serious harm, that the defendant knew about that condition, and that the defendant's response exhibits deliberate indifference to the risk the condition created. *Id.* at 769, 771. Plaintiffs often proceed under this theory when their claim is against an administrator in charge of a facility, such as a warden or a prison superintendent. *See, e.g.*, *Marsh v. Butler Cnty.*, 268 F.3d 1014 (11th Cir. 2001) (en banc), *abrogated in part by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007); *Hale*, 50 F.3d 1579; *LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993).

---

[8] Here, and elsewhere in this Opinion, the Court cites nonbinding authority. While the Court acknowledges that these cases are nonprecedential, the Court finds them persuasive.

Under the second theory—involving "particularized risk"—plaintiffs have asserted that a defendant was "subjectively . . . aware of [an] individualized danger" to the plaintiff but "failed to act to alleviate that risk." *Est. of Owens*, 660 F. App'x at 769. Plaintiffs often proceed under this theory when their claim is against a lower-level employee at a facility who personally interacted in some way with the plaintiff, such as a deputy warden or a guard. *See, e.g.*, *Carter v. Galloway*, 352 F.3d 1346 (11th Cir. 2003); *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003), *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010); *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312 (11th Cir. 2016).

Cain proceeds under both theories.  He alleges that all Defendants are liable under the generalized risk theory based on the conditions of understaffing and overcrowding at Elmore, which subjected him to a substantial risk of inmate-on-inmate violence.  Under the particularized risk theory, he alleges that the Officer Defendants failed to protect him from the specific threat posed by Cannon.  All Defendants challenge that Cain has stated a plausible claim for relief.  Specifically, they contest the sufficiency of Cain's allegations on two grounds:  (1) deliberate indifference and (2) causation.  Further, the Defendants challenge using the DOJ Report to establish either prong.  Cain responds to these arguments as to the Supervisory Defendants, but fails to address the Officer Defendants.  This inaction supports a finding of abandonment. *See, e.g.*, *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) (providing that "[w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned" (citing *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995))).

Accordingly, Cain's failure to protect claim against the Officer Defendants is due to be DISMISSED.

In their briefing, the Supervisory Defendants do not challenge Cain's allegations as to a substantial risk of serious harm from inmate violence at Elmore. The Court finds that Cain's allegations, *see supra* Section IV.C.2, accepted as true at this stage, are sufficient to show conditions that "were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Marbury*, 936 F.3d at 1233. Having determined that Cain plausibly alleges a substantial risk of serious harm from inmate violence, the Court now proceeds to the merits of the arguments made and in dispute.

## 1. The DOJ Report

While they do not dispute that they received the DOJ Report, the Supervisory Defendants argue that the Court cannot consider it as providing them notice of constitutionally infirm conditions at Elmore for two reasons. First, the DOJ Report contains an express disclaimer that the "Department does not serve as a tribunal authorized to make factual findings and legal conclusions binding on, or admissible in, any court, and nothing in [the Report] should be construed as such." (Doc. 71-1 at 8). Second, these Defendants claim that "general details of inmate-on-inmate violence at nearly all Alabama male prisons does not show obvious, rampant, and flagrant occurrences at Elmore so that each Defendant would be placed on notice to take corrective action." (Doc. 73 at 7).

The Court does not consider itself bound by the Report's "factual findings and legal conclusions." And the Report does not just discuss "general details of inmate-on-inmate violence at nearly all Alabama male prisons," but also conditions specific to Elmore. So

given that the Defendants do not dispute that they received the Report, to the extent it tracks Cain's factual allegations and discusses conditions specific to Elmore, the Court will consider it as providing notice to the Supervisory Defendants of the conditions there. *See, e.g.*, *Barefield v. Dunn*, 688 F. Supp. 3d 1026, 1056 (M.D. Ala. 2023); *Williams v. Pelzer*, 2024 WL 5113239, at *28 (N.D. Ala. Dec. 13, 2024); *Williams v. Dunn*, 2025 WL 837918, at *3 (N.D. Ala. Mar. 17, 2025).

## 2. Deliberate Indifference

The Supervisory Defendants argue that Cain has not plausibly alleged that they acted with deliberate indifference to the substantial risk of serious harm from inmate-on-inmate violence and the excessive amount of contraband weapons at Elmore. The deliberate indifference standard, recently clarified by the Eleventh Circuit in *Wade v. McDade*, encompasses both an objective and subjective component. 106 F.4th 1251 (11th Cir. 2024) (en banc). Regarding the latter, a plaintiff must plausibly allege that the Defendants each "acted with 'subjective recklessness as used in the criminal law.'" *Id.* at 1262 (citation omitted). "To do so, he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Id.* But as to the objective component, "even if the defendant 'actually knew of a substantial risk to inmate health or safety,' he 'cannot be found liable under the Cruel and Unusual Punishments Clause' if he 'responded reasonably to [that] risk.'" *Id.* (citation omitted).

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from

circumstantial evidence." *Hale*, 50 F.3d at 1583 (citing *Farmer*, 511 U.S. at 842). "[A court] may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. If an Eighth Amendment plaintiff plausibly alleges that "a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known about it,"'" but failed to reasonably address it, the plaintiff's claim will survive a motion to dismiss. *See Farmer*, 511 U.S. at 842–43 (citation omitted).

"Merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citation omitted). If a defendant "attempt[ed] to remedy a constitutionally deficient prison condition, but fail[ed] in that endeavor, he cannot be deliberately indifferent unless he kn[ew] of, but disregard[ed], an appropriate and sufficient alternative." *LaMarca*, 995 F.2d at 1536; *see also Wade*, 106 F.4th at 1255. Further, a plaintiff must plausibly allege that the defendant "had the capability (authority and means) to provide adequate security and did not do so." *Williams v. Bennett*, 689 F.2d 1370, 1389 (11th Cir. 1982) (parenthetical in original); *see also Barefield*, 688 F. Supp. 3d at 1075 (examining whether the defendants possessed the power, authority, discretion, and means to remedy an excessive risk of inmate violence).

In sum, Cain must plausibly allege that (1) each Supervisory Defendant was subjectively aware that his or her own failure to address the conditions at Elmore put Cain

at serious risk for substantial harm from inmate violence, and (2) each Supervisory Defendant did not respond reasonably to that risk. *See Wade*, 106 F.4th at 1262.

The Court finds that Cain has plausibly alleged that each of the Supervisory Defendants were subjectively aware that his or her own failure to address the conditions at Elmore exposed Cain to a serious risk of substantial harm from inmate violence. According to the complaint, Commissioner Hamm and Warden Calloway were notified of the history of widespread violence, contraband, and understaffing at Elmore by the DOJ report, which was sent to them. *See Dickinson v. Cochran*, 833 F. App'x 268, 270–73 (11th Cir. 2020) (concluding that defendants knew about history of widespread inmate-on-inmate abuse at jail in part through a DOJ Report); *Marsh*, 268 F.3d at 1029 (concluding that sheriff defendant knew about history of violence in part through reports). And Cain's allegation that Warden Baldwin was aware of the DOJ Report through discussions with Warden Calloway is plausible given Warden Baldwin's role as Deputy Warden at Elmore, where he affected daily operations, oversight operations, investigations, reviews, and general supervising. *See Barefield*, 688 F. Supp. 3d at 1078. The DOJ Report discussed precisely the conditions that Cain alleges—understaffing, overcrowding, violence, contraband—not just across all ADOC facilities, but also at Elmore. *See D.S. v. Dunn*, 2022 WL 1785262, at *9 (N.D. Ala. June 1, 2022) (finding that the plaintiff had sufficiently alleged specific conditions that create violence at the jail, rather than merely a generalized risk). The DOJ Report, undisputedly available to the Supervisory Defendants, specified that Elmore was only 41% staffed. Cain further alleges that Commissioner Hamm knew of the risk of

violence at Elmore from litigation and press releases in which he was involved, and that the Wardens knew of the violence from personal observation and staff communications.

Direct sources of knowledge notwithstanding, "the complaint alleges sufficient facts to show that the risk of inmate-on-inmate violence at [Elmore] was 'obvious.'" *See Q.F. v. Daniel*, 768 F. App'x 935, 946 (11th Cir. 2019) (citing *Farmer*, 511 U.S. at 842–44, 846 n.9). And these Defendants' "supervisory positions suggest, at least by inference, that [they] were aware" of the allegations pertaining to staffing, overcrowding, weapons proliferation, failures to monitor and supervise, and the widespread history of violence at Elmore. *See id.* (citing *Farmer*, 511 U.S. at 842); *see also Barefield*, 688 F. Supp. 3d at 1077. Indeed, Cain's allegations paint "a dark picture of life at [Elmore]; a picture that would be apparent to any knowledgeable observer, and certainly to [] official[s]" like the Elmore supervisors. *See LaMarca*, 995 F.2d at 1536. At this stage, Cain has plausibly shown, given his allegations of the Supervisory Defendants' knowledge of the dangerous conditions at Elmore, that they knew their failure to address understaffing, overcrowding, or the excess contraband in the facility would only increase the risk of violence for Cain.[9] *See Brown*, 2024 WL 5168637, at *5 (finding that plaintiff had plausibly alleged deliberate indifference on similar facts); *Sumpter v. Butler*, 2024 WL 4954322, at *8 (S.D. Ala. Dec.

---

[9] Cain argues that Commissioner Hamm "should be precluded from contesting that [he] lacked subjective awareness" of the problems at Elmore because of Judge Thompson's findings in *Braggs v. Dunn* that the former Commissioner of the ADOC, in his official capacity, knew of these issues and failed to rectify them. 257 F. Supp. 3d 1171 (M.D. Ala. 2017). Because the Court finds Cain's allegations sufficient at this stage to establish subjective awareness on the part of Commissioner Hamm, the Court need not consider whether preclusion applies.

3, 2024) (same); *Johnson v. Dunn*, 2024 WL 1076802, at *16 (N.D. Ala. Mar. 12, 2024) (same); *Wilson v. Dunn*, 618 F. Supp. 3d 1253, 1273 (N.D. Ala. 2022) (same).

Cain also plausibly alleges that the Supervisory Defendants did not reasonably respond to the increased risk of violence he faced from their failures to address the conditions at Elmore. Cain alleges that the Supervisory Defendants did not address these failures, despite having the ability to do so through their authoritative roles over operations and supervision in the ADOC or at Elmore. He also lists at least seven ways these Defendants could have responded to the risk of violence he faced but failed to do so. *See supra* Section IV.C.3. The Defendants cite facts from ADOC Reports, *see id.*, and argue that they "have been attempting to remedy conditions and understaffing." (Doc. 76 at 4). Even if the Court can consider these facts at this stage of the proceedings, the Court is not convinced these facts alone can overcome Cain's well-pled allegations that the Supervisory Defendants failed to reasonably respond to the risk of violence he faced because of their inaction on the dangerous conditions at Elmore. *See LaMarca*, 995 F.2d at 1536 (explaining that if a defendant "attempt[ed] to remedy a constitutionally deficient prison condition, but fail[ed] in that endeavor, he cannot be deliberately indifferent *unless* [he] kn[ew] of, but disregard[ed], an appropriate and sufficient alternative" (emphasis added)).

Accordingly, Cain has plausibly alleged deliberate indifference by the Supervisory Defendants. The Court moves next to causation.

### 3. Causation

The Court begins with a threshold point of clarification. The Supervisory Defendants have framed their arguments around § 1983's supervisory causation standard.

Cain frames half of his arguments around supervisory causation, and half around direct causation for the Supervisory Defendants' own unconstitutional conduct. After a review of the caselaw, the Court concludes that while either might be appropriate in a generalized risk case, direct causation is the appropriate avenue here.

A supervisor can be liable for (1) his own unconstitutional conduct, or (2) conduct that meets the supervisory liability causal connection framework. *See Cottone*, 326 F.3d at 1360. Under the supervisory causation framework, a supervisor may be liable for the actions of a subordinate when: (1) there is a history of widespread abuse putting the supervisor on notice to take action but he fails to do so, (2) a supervisor's custom or policy results in a subordinate's deliberate indifference to constitutional rights, or (3) the supervisor knew that subordinates would act unlawfully and failed to stop them from doing so. *Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone*, 326 F.3d at 1360).

However, this supervisory-causal-connection framework *supplements* rather than *supplants* the general rule that officials, whether or not they bear the title of supervisor, may be held liable for their *own* unconstitutional conduct. "When analyzing [generalized risk claims], the Eleventh Circuit has repeatedly determined personal liability by asking whether a defendant, regardless of his supervisory status, demonstrated deliberate indifference to a substantial risk of serious harm, without analyzing the subordinate-action-causal-connection framework." *Barefield*, 688 F. Supp. 3d at 1065 (collecting cases). So regardless of the acts of their subordinates, the Supervisory Defendants may nevertheless have *personally* violated the Eighth Amendment by the nature of their *own* conduct if they

manifested deliberate indifference to a substantial risk of serious harm, which caused Cain's injuries. *See Farmer*, 511 U.S. at 835–38. If these Defendants "personally participated in the unconstitutional conditions of confinement due to the[ir] responsibility . . . for control and maintenance of [Elmore]," direct liability may attach— supervisory causation notwithstanding. *See Ogletree v. Colbert Cnty.*, 2021 WL 4477630, at *24 (N.D. Ala. Sept. 30, 2021).

For direct liability to attach, two causal links must be established. *Hale*, 50 F.3d at 1584 (citing *LaMarca*, 995 F.2d at 1538). "First, a link between [a defendant's] allegedly deliberately indifferent acts and omissions and the excessive risk of violence; and second, a link between the excessive risk of violence and [the plaintiff's] injur[ies]." *Id.* The Eleventh Circuit has also described these two links as (1) an "individualized causation requirement (proof that a defendant contributed to the unconstitutional prison conditions)," and (2) "the more generalized causation requirement (proof that the unconstitutional prison conditions contributed to [the plaintiff's] injuries)." *Williams*, 689 F.2d at 1384 (parentheticals in original).

The two causal links are distinct. But at this stage, the Court focuses on the individualized causal link. This is because if a plaintiff alleges a known, substantial risk of serious harm, and a plaintiff plausibly alleges a link between a defendant's allegedly deliberately indifferent acts and omissions and that substantial risk, the defendant is "precluded from contending that the unconstitutional condition was not at least a proximate cause of [the plaintiff's] injuries." *Williams*, 689 F.2d at 1389. "This is not to say that a plaintiff need not show a causal link between the constitutionally infirm condition and the

alleged injuries. Rather, the finding that a prison condition offends the Eighth Amendment presupposes the distinct likelihood that the harm threatened will result." *LaMarca*, 995 F.2d at 1538.

Cain has plausibly alleged a causal link "between [the Supervisory Defendants'] allegedly deliberately indifferent acts and omissions and the excessive risk of violence [at Elmore]." *See Hale*, 50 F.3d at 1584 (citing *LaMarca*, 995 F.2d at 1538). As discussed above, the complaint sufficiently identifies the Supervisory Defendants' responsibilities and authority over inmate safety and security at the time of Cain's attack. In light of the authority over safety that *each* of these Defendants possessed, Cain plausibly alleges that the excessive risk of inmate violence at Elmore "flowed" naturally and directly from the alleged inaction of the Supervisory Defendants to adopt policies to address understaffing, overcrowding, contraband, and more. *See Hale*, 50 F.3d at 1584; *Barefield*, 688 F. Supp. 3d at 1089. And Cain plausibly alleges that adopting such measures, which was allegedly within *each* of the Supervisory Defendants' power, would have alleviated the risk of inmate violence. Thus, Cain has carried his burden and shown, at this stage, individual causation for each Supervisory Defendant.

Because Cain has plausibly alleged this link, the Supervisory Defendants are "precluded from contending that the unconstitutional condition was not at least a proximate cause of [the plaintiff's] injuries." *Williams*, 689 F.2d at 1389. Even still, the Court finds that Cain has sufficiently pled the "more generalized causation requirement (proof that the unconstitutional conditions contributed to [his] injuries)." *See Williams*, 689 F.2d at 1384. As stated, the Court has found that Cain plausibly alleged constitutionally unacceptable

conditions that created an excessive risk of inmate violence. *See supra* Section V.C.  And Cain sufficiently alleges that the risk materialized when he was attacked on May 10 in an under-supervised, overcrowded dorm.

Accordingly, Cain has stated a plausible claim for relief on his failure to protect claim against the Supervisory Defendants based on the dangerous conditions at Elmore. The Supervisory Defendants' motion to dismiss this claim is therefore DENIED.[10]

## D.    Qualified Immunity

The Defendants move for the dismissal of Cain's state created danger claim (Count II), and the Officer Defendants move for the dismissal of Cain's failure to intervene claim (Count III), on the grounds of qualified immunity.  "The doctrine of qualified immunity protects government officials [sued in their individual capacities] 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  There is a two-step analysis to determine whether qualified immunity is available. "First, the defendant must show that she acted within the scope of her discretionary authority.  Once the defendant has so shown, the plaintiff must show that the defendant violated the plaintiff's clearly established statutory or constitutional rights." *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (internal citations omitted).  The parties do not dispute that the Defendants were acting within their discretionary authority, and the

---

[10] The Defendants did not argue their entitlement to qualified immunity on Count I.

Court finds that they were because they were supervising inmates as prison officials. *See Cottone*, 326 F.3d at 1358.

Having found that the Defendants were acting within their discretionary authority, "the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." *Smith ex rel. Smith v. Siegelman,* 322 F.3d 1290, 1295 (11th Cir. 2003). To meet that burden, Cain must show that "the facts that he has alleged or shown make out a violation of a constitutional right" and if so, that the "right at issue was 'clearly established' at the time of defendants' alleged misconduct." *Pearson*, 555 U.S. at 232 (internal citations omitted). The Court may analyze these two prongs "in whatever order is deemed most appropriate for the case." *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42). A right may be clearly established in one of three ways. First, there may be "case law with indistinguishable facts clearly establishing the constitutional right." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009). Second, there may be "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right." *Id.* at 1292. And third, the law is clearly established when the defendant's conduct was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.*

"[E]ach defendant is entitled to an independent qualified immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). So the Court "must be careful to evaluate a given defendant's qualified immunity claim, considering only the actions and omissions in which that particular defendant engaged." *Id.* The parties did not assist the Court in this regard. Cain often refers to the

Defendants in classes as the "Supervisory Defendants" or the "Officer Defendants," and the Defendants filed one joint motion to dismiss in which they too classified themselves as either "Supervisory Defendants" or "Officer Defendants." Indeed, the Defendants make no arguments for dismissal specific to an individual defendant. So at this stage, it is difficult for the Court to conduct an individualized assessment of each Defendant's entitlement to qualified immunity. Nevertheless, the Court undertook this task as best it could.

On both Counts II and III, the Defendants argue that Cain fails to show a constitutional violation or a violation of clearly established law.

### 1. Count II:  State-Created Danger

Cain asserts "state-created danger" claims against all Defendants on the theory that they violated his Eighth and Fourteenth Amendment rights by placing him at an increased risk of violence that he would not have otherwise faced. He alleges that the Defendants (1) knew of the risks he faced at Elmore; (2) were aware of the risks posed by Cannon; (3) consciously disregarded these risks; and (4) that this conscious disregard directly and proximately caused Cain's injuries. "[C]ustodial relationships" "automatically give rise to a governmental duty to protect individuals from harm by third parties under the substantive due process clause." *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999). Further, "[t]he 'process' that the Constitution guarantees [in the Due Process Clause] in connection with any deprivation of liberty thus includes a continuing obligation to satisfy certain minimal custodial standards." *Collins v. City of Harker Heights*, 503 U.S. 115, 127–28 (1992) (citation omitted). "[P]rison officials must . . . 'take reasonable measures to

guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

The Defendants first cast doubt on whether Cain can bring this claim at all, as the state created danger theory "invokes a person's rights under the substantive due process component of the Fourteenth Amendment, but that framework applies to plaintiffs in 'non-custodial setting[s].'" (Doc. 73 at 9 (citing *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1306 (11th Cir. 2003))).  It appears to the Court that the duty owed when a person is in a custodial relationship is cognizable through a failure to protect claim, which Cain has brought here.  Assuming Cain has a distinct, cognizable claim for state-created danger, it is a novel one that district courts around Alabama have just begun to address. *See Johnson*, 2024 WL 1076802, at *28; *Wilson*, 618 F. Supp. 3d at 1284; *Sumpter*, 2024 WL 4954322, at *10; *Pilcher v. Dunn*, 2023 WL 2756978, at *8 (N.D. Ala. Mar. 31, 2023).  Cain failed to cite authority from the Supreme Court or the Eleventh Circuit recognizing such a claim, and the Court's independent research revealed none.  Therefore, it appears to the Court that Cain's state-created danger claim, even if the claim is cognizable, is due to be DISMISSED because Cain fails to show a violation of clearly established law.[11] *See Wilson*, 618 F. Supp. 3d at 1284 (explaining that existing caselaw "do[es] little to clarify the *standard* for what constitutes a state-created danger as to custodial plaintiffs" and primarily "concerns dissimilar factual scenarios such as violence against prisoners resulting from rioting or

---

[11] Cain does not argue to the contrary, and it is his burden to show the Defendants violated clearly established law.  In his response brief, Cain directs all of his arguments surrounding clearly established law to his failure to protect claim. (Doc. 75 at 10–12.)  The Defendants, however, did not move to dismiss that claim on qualified immunity grounds.

noncompliant behavior, or students injured while on school campuses" (emphasis in original) (citations omitted)).

### 2. Count III: Failure to Intervene

In Count III, Cain alleges that the Officer Defendants "had the realistic opportunity to intervene to protect Cain" from Cannon's attack, but that "[n]o Officer Defendant took reasonable steps to prevent further serious harm to Cain." (Doc. 71 at 31, para. 118). Cain styles this Eighth Amendment claim as "failure to intervene." The Eleventh Circuit has held that prison correction officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (citing *Ensley v. Sloper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). While Cain's "failure to intervene" label might make sense based on his factual allegations, these claims typically involve an officer's failure to intervene in another *officer's* use of excessive force. *See, e.g.*, *Ensley*, 142 F.3d at 1407. At the heart of any Eighth Amendment claim, however, is deliberate indifference. Cain alleges that the Officer Defendants were subjectively aware of the substantial risk of harm that he faced during the attack, and that they failed to respond reasonably to that risk.[12] Accordingly, to the extent the labeling of Cain's Eighth Amendment claim based on the Officer Defendants' conduct

---

[12] To the extent that Cain asserts a "failure to intervene" claim based on the Officer Defendants allegedly seeing Cannon in possession of a weapon and failing to seize it, he fails to address it in his motion to dismiss. That claim is therefore due to be DISMISSED as abandoned.

during the attack matters, the Court evaluates Cain's claim as one of deliberate indifference rather than "failure to intervene."[13]

As stated above, the deliberate indifference standard encompasses both a subjective and objective component. Regarding the former, a plaintiff must plausibly allege that the Defendants each "acted with 'subjective recklessness as used in the criminal law.'" *Wade*, 106 F.4th at 1262 (citation omitted). "To do so, he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Id.* But as to the objective component, "even if the defendant 'actually knew of a substantial risk to inmate health or safety,' he 'cannot be found liable under the Cruel and Unusual Punishments Clause' if he 'responded reasonably to [that] risk.'" *Id.* (citation omitted).

The allegations differ as to the Officer Defendants during Cain's attack. While Officer McCullough is alleged to have been monitoring the A2 dorm and was thus present when the attack began, Officers Story and Barnes were not in A2 at the time and responded from elsewhere. Accordingly, the Court evaluates the Officer Defendants in two groups.

### a. Officer McCullough

Cain plausibly alleges deliberate indifference on the part of Officer McCullough. According to the complaint, Officer McCullough was monitoring the A2 dorm when the attack began. As Cannon repeatedly stabbed Cain, and other inmates screamed for help, Officer McCullough allegedly stood twenty feet away, doing nothing to intervene or

---

[13] In their motion to dismiss, the Defendants also argued as though this were really a claim for deliberate indifference. (*See* doc. 73 at 12–17).

protect Cain.  Considering that he was stabbed six times and suffered severe injuries as a result, Cain has plausibly alleged that he faced a substantial risk of serious harm.  And based on the allegations that Officer McCullough was monitoring the A2 dorm at the time of the attack, and stood a mere twenty feet away while it occurred, the Court can infer he was aware of this risk, and that it would only worsen absent his intervention.  Further, the Court can infer that Officer McCullough's response was not objectively reasonable.  He allegedly possessed the necessary gear (pepper spray and a baton) to intervene, but never did so.  "Doing *nothing* in the face of a brutal inmate-on-inmate assault that resulted in" a hospital stay and extensive injuries plausibly constitutes deliberate indifference. *See Martin v. Sheriff of Walker Cnty.*, 2020 WL 2475813, at *7 (N.D. Ala. May 13, 2020) (citing *Ensley*, 142 F.3d 1402, 1407 (explaining that if an official fails or refuses to intervene when a constitutional violation takes place in his presence, the official is directly liable under § 1983); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (per curiam) (holding that *pro se* plaintiff's allegation that prison official failed to intervene "in the face of an inmate disturbance that he observed, particularly one which [plaintiff] alleges resulted in his loss of oxygen and necessitated CPR treatment," may constitute deliberate indifference to a substantial risk of serious harm)).

Having determined that Cain sufficiently pled that Officer McCullough's conduct during the attack violated his Eighth Amendment rights, the Court must now determine whether it was clearly established that Officer McCullough's actions violated the Constitution.  As discussed above, a right can be clearly established through: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad

statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1291–92. For the second method, a broad legal principle must establish the law "'with obvious clarity' to the point that every objectively reasonably government official facing the circumstances would know that the official's conduct" violated the law. *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002) (citation omitted); *see also United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning, and . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))).

It would have been clear to a reasonable officer in Officer McCullough's position that his conduct during Cain's assault violated Cain's constitutional rights. "[I]t is well settled that a prison inmate has a constitutional right to be protected . . . from physical assaults by other inmates." *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam); *see also Farmer*, 511 U.S. at 832; *Purcell ex rel. Estate of Morgan*, 400 F.3d at 1320; *Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014).[14] This "general constitutional rule" applies with "obvious clarity" to Officer McCullough's alleged

---

[14] The Eleventh Circuit has issued an unpublished decision holding that a prison official may be liable for failure to protect an inmate from an ongoing assault by another inmate. *See Murphy*, 159 F. App'x at 948. Because this decision is not binding precedent, it alone cannot clearly establish the law for purposes of qualified immunity.

conduct here. *See Lanier*, 520 U.S. at 271. No reasonable jailer could conclude that it was constitutionally permissible to do *nothing* while observing an attack on an inmate under his supervision during which the inmate was stabbed multiple times. Considering Cain's allegations, no factually particularized case law was necessary to make it obvious to every reasonable officer in Officer McCullough's situation that his failure to intervene violated Cain's constitutional right to be protected from physical assault by other inmates. *See Martin*, 2020 WL 2475813, at *8 (arriving at a similar conclusion on similar factual allegations). Accordingly, at this stage, Officer McCullough is not entitled to qualified immunity on this claim.

### b. Officers Barnes and Story

The Court comes to a different conclusion for Officers Barnes and Story, and determines that they are entitled to qualified immunity. Cain alleges that these Officers "arrived and subdued Cannon with force" after Cain had been stabbed six times. (Doc. 71 at 9, para. 16). He alleges that it took them "so long to arrive that Cannon had time to hide his weapon," which they eventually located and seized. (*Id.* at 9, para. 17). Although Cain faced a substantial risk of serious harm from the attack, he fails to plausibly allege that these Officers responded unreasonably to that risk. These Officers are not alleged to have been in A2 when the attack began, nor are they alleged to have watched the attack take place for even a moment before intervening upon arriving to A2. *See Johnson v. Lang*, 2022 WL 2734421, at *5 (11th Cir. 2022) (dismissing a similar claim in part because the plaintiff failed to allege how much of the attack the officer witnessed before intervening). Further, the Court cannot infer that these Officers were unreasonably slow in responding

to the attack, because Cain provides no factual allegation as to where these Officers were when the attack began (and thus how far they had to travel to A2) or when they were notified about it. Because Cain's factual allegations are insufficient to show these Officers responded unreasonably to Cain's attack, he fails to plausibly allege that they violated his Eighth Amendment rights. Accordingly, Officers Story and Barnes are entitled to qualified immunity on this claim.

**E.   Section 1983 Conspiracy**

Cain alleges that the Supervisory Defendants conspired to deprive Cain of his right to be free from unreasonable harm by agreeing not to adopt safer policies and procedures in response to the problematic conditions at Elmore. Specifically, Cain alleges the Supervisory Defendants agreed to understaff and overpopulate Elmore, to house perceived danger-prone inmates together, and to overlook correctional officers' safety and security failings.

"To state a claim for conspiracy under § 1983, a plaintiff must allege that (1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights; and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." *Weiland*, 792 F.3d at 1327. Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence. *Burrell v. Bd. of Trs. Of Ga. Military Coll.*, 970 F.2d 785, 789 (11th Cir. 1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir. 1992).

The Defendants contend this claim should be dismissed because Cain fails to allege facts from which it can be inferred that there was a meeting of the minds between the Defendants.  Cain responds that because the Defendants each played a role in jointly causing the constitutional violations, the Court may plausibly infer that there was a meeting of the minds.

In evaluating whether a plaintiff has sufficiently alleged a civil conspiracy, the Court must consider that "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 556–57.  In his complaint, Cain alleges in a conclusory manner that the Defendants agreed among themselves to deprive him of his right to be free from unreasonable harm and failure to intervene.  He pleads insufficient facts which plausibly support this assertion.   Accordingly, his § 1983 conspiracy claim is due to be DISMISSED.

## F.    State Law Claims: Negligence and Civil Conspiracy

The Court moves next to Cain's negligence and civil conspiracy claims under Alabama state law.  The Defendants moved to dismiss these claims on various grounds.  Cain did not respond to any of these arguments in his responsive briefing or otherwise address his state-law claims beyond one citation to an Alabama civil conspiracy case in his surreply.[15]   In their reply, the Defendants argue that Cain has impliedly abandoned his

---

[15] The Court notes that Cain addressed the intracorporate conspiracy doctrine, but in the context of his § 1983 conspiracy claim, which the Court dismisses on other grounds.

state-law claims, and that they should be dismissed on this basis alone. The Court agrees, as "[t]he failure to respond to arguments regarding claims addressed in a motion to dismiss is a sufficient basis to dismiss such claims as abandoned." *A1 Procurement, LLC v. Hendry Corp.*, 2012 WL 6214546, at *3 (S.D. Fla. Dec. 13, 2012); *see also Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *Hurry v. Gen. Motors LLC*, 622 F. Supp. 3d 1132, 1145 (M.D. Ala. 2022). This conclusion is only punctuated by Cain's filing of a surreply, which also failed to substantively address any of the Defendants' arguments for dismissing the state law claims. Accordingly, the Defendants' motion to dismiss Cain's state law negligence and civil conspiracy claims is due to be GRANTED.

## VI. CONCLUSION

For the reasons stated above, and for good cause, it is

ORDERED that the Defendants' motion to dismiss (doc. 72) is GRANTED in part and DENIED in part, as follows:

1. As to Captain Fails and Warden McKee, the motion is GRANTED and they are DISMISSED from this case.

2. As to Officer McCullough, the motion is DENIED as to Count III but GRANTED as to all other claims against him.

3. As to Officers Barnes and Story, the motion is GRANTED and they are DISMISSED from this case.

4. As to Commissioner Hamm, Warden Calloway, and Warden Baldwin, the motion is DENIED as to Count I but GRANTED as to all other claims against them.

DONE this 25th day of March, 2025.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE